[No. G003998. Fourth Dist., Div. Three. Mar. 1, 1988.]

JAMES A. JONES, Plaintiff and Appellant, v.
KENNETH KALLMAN et al., Defendants and Respondents.

132

COUNSEL

York & Walker and Michael G. York for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

OPINION

WALLIN, J.—Plaintiff James Jones appeals from a defense verdict in an action for usury in connection with a real estate loan. Jones argues the court erred in finding the loan "broker-arranged" and therefore exempt from state usury laws. We affirm.

I

In May 1980 Jones bought an apartment building under a land sale contract and assumed a $100,000 second trust deed loan on the property, due in January 1981. Subsequently, his employer transferred him abroad and Jones asked John Burridge, a licensed real estate broker, to handle his affairs. Burridge was unable to find a lender to refinance Jones's second trust deed, and so enlisted the aid of another licensed broker, Robert Johnston.

Johnston jointly owned Bonanza Properties, a real estate brokerage firm, with licensed real estate salesman Kenneth Kallman. Johnston referred Jones's problem to Kallman who found a willing lender, Carolyn Phillips. Johnston advised Burridge that Phillips would lend Jones $100,000 for one year at 21 percent interest, plus 10 points. Burridge, who had Jones's power of attorney, accepted the terms.

Under Johnston's supervision Kallman prepared the loan documents and opened the escrow. Jones executed a $100,000 promissory note, secured by a second trust deed on the real property, in favor of Phillips. Jones received $90,000 from the escrow account; the remaining $10,000, representing the points, was paid directly to Kallman as a commission. None of this commission went to Johnston.

Before the note to Phillips came due, Burridge sought a forbearance of the loan until January 1983. Phillips agreed to the extension and Kallman prepared the extension contract. The interest rate on the loan for this additional year was 18 percent, and Kallman again received $10,000 as a commission on the transaction.

Jones made all interest payments due under the note and forbearance agreement. In January 1983 he paid the balance and received reconveyance of the deed. Jones thereafter sued Phillips and Kallman, alleging the loan and forbearance were usurious under the California Constitution.

The trial court found the transactions were not usurious because they fell within the constitutional exemption for secured loans "arranged" by licensed real estate brokers. (See Cal. Const., art. XV, § 1; *Stickel* v. *Harris* (1987) 196 Cal.App.3d 575, 581 [242 Cal.Rptr. 88].)[1] Jones appeals from that judgment.

## II

Jones contends the court erred in finding the loan and forbearance "broker-arranged" within the meaning of the constitutional exemption. He asserts the only qualifying transactions are ones in which a broker is "actively involved" and receives compensation—neither of which condition was met here, according to Jones. Essentially, he argues the use of Johnston as a "broker" was a subterfuge to escape the interest restrictions applicable to all but exempt transactions. In Jones's view, the loan and forbearance were arranged wholly by Kallman, a nonbroker.

The statement of decision issued by the court below contains specific findings on the factual issues Jones raises. The court characterized Johnston's involvement in the transactions as follows: "The initial calls requesting the loan were made by plaintiff's agent to a licensed broker who set the terms and reviewed the documents. This minimal participation by the broker was sufficient, in the Court's opinion, to qualify the loan as 'broker arranged.' "

The court also made an affirmative finding on the question of broker compensation, an essential element of an exempt "broker-arranged" loan. (See Civ. Code, § 1916.1; *Stickel* v. *Harris, supra,* 196 Cal.App.3d at p. 583.)[2] "While checks in payment of points were deposited directly into

---

[1] Section 1 of article XV of the California Constitution exempts from all interest limitations "any loans, made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property. . . ."

[2] Civil Code section 1916.1 is a legislative effort to elucidate the scope of the constitutional exemption. (*Stickel* v. *Harris, supra,* 196 Cal.App.3d at p. 581.) This section provides in

Kallman's bank account, this fact alone is not controlling in determining whether the loan was 'broker arranged.' *Although the broker, Johnston, did not receive payment directly from the transaction, he had a business relationship with Kallman.* Viewing Johnston's participation in arranging the loan and this business arrangement as a whole, the Court rejects plaintiff's argument that the transaction was a sham." (Italics added.)

■ Factual findings on these issues are peculiarly the province of the trial court. "In usury cases the trier of fact is vested with the power to resolve many issues attending and including the ultimate question of whether a particular transaction is usurious. [Citations.]" (*Stickel* v. *Harris, supra,* 196 Cal.App.3d at p. 584.) Therefore our review is limited to deciding whether the trial court's findings are supported by substantial evidence. (*Ibid.*)

■ The record supports the court's finding that Johnston's participation in the loan and forbearance rose to the level of "arranging" these transactions. Johnston testified he determined the interest rates and points to be charged Jones on the loan "at the lender's request," and he similarly set the terms of the forbearance. Burridge confirmed that Johnston told him of these terms, rather than Kallman. Finally, Johnston stated that he reviewed the loan and forbearance documents prepared by Kallman. The trial court found such involvement "minimal" but legally sufficient to bring the transactions within the exemption. We cannot fault this determination.

■ The substantiality of the evidence supporting the court's finding of broker compensation is a closer question. The court cited no specific benefit to Johnston as recompense for his brokerage services; instead, the court simply alluded to the "business relationship" between Johnston and Kallman. Impliedly, then, the court must have found Johnston was compensated through the commissions paid to his partner.

Trial testimony revealed that Johnston and Kallman agreed from the beginning of their partnership that each would keep 100 percent of the commissions he earned.[3] Kallman testified that a portion of each

---

pertinent part: "The restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property. For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another, . . . ."

[3] Unlike Kallman, the nonpartner salesmen at Bonanza Properties split their commissions with their broker, Johnston.

commission earned by the partners was "placed into Bonanza Properties" and by this method company expenses were paid.

In *Stickel* v. *Harris, supra,* 196 Cal.App.3d 575 the court considered the question: What constitutes "compensation" for purposes of "broker-arranged" exempt transactions under the state's usury laws? The court began its analysis with the observation that "compensation is a concept which has received an extremely broad definition sufficient to encompass the receipt of just about any form of monetary or tangible benefit that is not self-bestowed. [Citations.] '[T]he nature of compensation . . . is as variable as the particular facts involved.' [Citation.]" (*Id.,* at p. 584.) Moreover, the court stated that "[w]hether a payment, advantage, benefit, or other form of consideration amounts to compensation" is an issue to be decided by the trier of fact. (*Ibid.*)

The facts of *Stickel* are illuminating. A licensed real estate broker arranged a loan at a 30 percent interest rate to a joint venture of which he was a member. The lender sued for recovery of principal and interest and defendants attempted to negate their obligation by characterizing the loan as usurious. The trial court held the loan was not usurious because it was an exempt transaction. On appeal defendants argued that finding was erroneous because the broker was not compensated nor did he expect compensation for his services as required by Civil Code section 1916.1.

All parties conceded the broker did not earn a fee or commission on the loan; rather, "his sole remuneration was to have been the profits he expected from the ultimate success of the joint venture." (*Stickel* v. *Harris, supra,* 196 Cal.App.3d at p. 589.) The appellate court held this *anticipation* of a share of the *joint venture's* future profits was sufficient "compensation" to make the transaction exempt under state usury laws. (*Id.,* at p. 585.)

In the instant case we confront a different version of the sort of broker compensation accepted by the court in *Stickel.* In finding Johnston was compensated by the commissions paid to Kallman, the trial court must have reasoned the partners' practice of putting "a portion" of each commission back into the business ultimately enhanced the partnership operation, and both Johnston and Kallman expected to reap the benefits of this contribution through future profitability.

While compensation in this form may be unorthodox, we hold it is sufficient. Courts have traditionally given a broad reading to the term

"compensation"; additionally, it is a finding of fact to which we must give great deference. (*Stickel* v. *Harris, supra,* 196 Cal.App.3d at p. 584.)[4]

Judgment affirmed.

Crosby, Acting P. J., and Seymour, J.,* concurred.

---

[4] Jones makes another argument which is essentially a rehashing of his earlier two. He contends Johnston did not arrange the transactions because Kallman acted alone, without a broker. In support of his argument he cites the absence of a written broker-salesman agreement between Johnston and Kallman as required by the Administrative Code, title 10, section 2726. He also points out that Kallman worked out of his own office and referred to Phillips as his own client. And he asserts Kallman received the entire commission from both transactions.

Such "facts" notwithstanding, we have concluded substantial evidence supports the court's finding that Johnston arranged the transactions and received compensation. We need respond to this last argument no further.

* Assigned by the Chairperson of the Judicial Council.