[No. E035201. Fourth Dist., Div. Two. Oct. 22, 2004.]

AYLEEN GIBBO, Plaintiff, Cross-defendant and Appellant, v.
JANICE BERGER, Defendant, Cross-complainant and Respondent.

## COUNSEL

Gary J. Bryant for Plaintiff, Cross-defendant and Appellant.

Law Offices of Darren P. Trone and Darren P. Trone for Defendant, Cross-complainant and Respondent.

## OPINION

**McKINSTER, Acting P. J.**—Ayleen Gibbo, plaintiff and appellant (hereafter Gibbo) appeals from the judgment entered against her and in favor of defendant and respondent, Janice Berger (hereafter Berger) on Gibbo's complaint to quiet title to certain real property located in Murrieta. Gibbo alleged in her complaint that in March 1992 she and her husband, Dick, borrowed $15,000 from defendant's father, Harold Berger.[1] The loan was evidenced by a note and secured by a deed of trust on Gibbo's residence.[2] The note specified that the loan was due and payable in one year and, in the interim, that Gibbo would pay interest only. Gibbo alleged that she had made interest payments on the loan through December 31, 2002, in the total amount of $17,250.

In December 2002 Berger initiated nonjudicial foreclosure to recover the $15,000 principal owed on the note. In response, Gibbo filed her quiet title action in which she alleged that the interest rate on the loan was 15 percent and that rate is usurious because it exceeds the 10 percent legal rate of interest allowed under article XV, section 1 of the California Constitution. Because the interest rate was usurious, Gibbo alleged that Berger could recover only the principal of $15,000, which Gibbo had paid to Berger before December 31, 2002. Therefore, Gibbo requested that title to the property be quieted in her and that she also recover the interest that had been paid to Berger as well as statutory treble damages and damages under Civil Code section 2941 for Berger's failure to reconvey title to Gibbo's real property. Gibbo also sought and obtained a preliminary injunction prohibiting Berger from foreclosing on Gibbo's real property.

Berger filed a cross-complaint for declaratory relief alleging that the loan had been arranged by a licensed real estate broker and therefore was exempt from the constitutional usury provision as specified in article XV, section 1 of the California Constitution and in Civil Code section 1916.1. Alternatively, Berger alleged that if the court found the interest rate was usurious, the note

---

[1] Both Dick Gibbo and Harold Berger were deceased by the time this action was initiated.

[2] Defendant is a joint tenant with her father on the note and trust deed.

contained a "safe harbor provision" as a result of which Berger was entitled to interest at "the maximum rate permitted by law" and therefore Gibbo owed $15,063, which Berger was entitled to recover by nonjudicial foreclosure.

Following a one-day court trial, the trial court found that the loan had been arranged by a licensed real estate broker and therefore was exempt from the constitutional usury provision. The court entered judgment against Gibbo and in favor of Berger on Gibbo's complaint and in favor of Berger and against Gibbo on Berger's cross-complaint for declaratory relief, declaring that the amount due and owing from Gibbo to Berger on the note is $15,000 with interest at the rate of 15 percent in the amount of $5,812.50 as of December 1, 2003. The court also awarded Berger costs and attorney fees under Code of Civil Procedure section 1033.5.

We conclude, for reasons we explain below, that the trial court erred in finding the loan had been arranged by a licensed real estate broker. Therefore, we will reverse the judgment on both the complaint and cross-complaint.

## FACTS

The facts are undisputed. Harold Berger loaned the Gibbos $15,000 in 1992. The loan was evidenced by a note and secured by a deed of trust on Gibbo's real property. The note and deed of trust had been prepared by Mecca Escrow, which was owned by Myrna Bravender, a licensed real estate broker. Bravender died about three years before the trial took place, but her former employee, Sandra Winger, testified in pertinent part that she and Bravender were the escrow officers who handled the Berger/Gibbo file. In accordance with the escrow instructions, the escrow officers prepared the loan documents using preprinted forms, obtained a title insurance policy, and disbursed funds. For those services, Mecca Escrow charged a fee of $100, which was paid through escrow.

According to the terms of the note, the Gibbos were to pay interest only for a period of one year, after which the entire balance was due and payable. Despite the terms of the note, the Gibbos made monthly interest payments in the amount of $187.50 over the course of 10 years. Harold Berger died in March 2002. In April 2002, Janice Berger, Harold's daughter, as executor of his estate and joint tenant on the note from the Gibbos, made demand for payment of the outstanding principal. When Gibbo indicated that she was unable to pay the balance due, Berger began nonjudicial foreclosure in accordance with the terms of the note.

As previously noted, Gibbo sued to enjoin the foreclosure and to quiet title, asserting that the 15 percent interest rate on the note was usurious and thus

violated article XV, section 1 of the California Constitution, which states in pertinent part "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest: [¶] (1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum."

Berger alleged in her answer and cross-complaint that certain loans are exempt from the usury statute including those made or arranged by a licensed real estate broker. (Cal. Const., art. XV, § 1.) "For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another . . . ." (Civ. Code, § 1916.1.) The trial court found that Myrna Bravender had "arranged" the loan for the parties and therefore the transaction was exempt from the usury law.

## DISCUSSION

The only issue in this appeal is whether Myrna Bravender, a licensed real estate broker, arranged the loan between Berger and Gibbo such that the loan was exempt from the usury provision in the California Constitution. Because the facts are undisputed, we are not bound by the trial court's resolution of this issue and instead review the question as one of law. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

As noted above, Civil Code section 1916.1 states, "a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another . . . ." (Civ. Code, § 1916.1.) Bravender did not solicit or negotiate the loan and the parties concede on appeal as they did in the trial court that her only involvement could have been to arrange the loan. Because the definition of "arranged" includes "arranging the loan for another," the dispositive question in this appeal is what conduct constitutes arranging a loan for another within the meaning of Civil Code section 1916.1.

One of the most recent cases to address this issue is *Del Mar v. Caspe* (1990) 222 Cal.App.3d 1316 [272 Cal.Rptr. 446], in which the borrower sued to recover treble damages based on an alleged usurious interest rate of 15 percent. Caspe, the defendant, was sued in his capacity as executor of the

lender's estate. He defended the lawsuit by asserting that the loans were exempt from the usury law because he is a lawyer and licensed real estate broker and he had arranged the loans. The evidence showed, among other things, that Caspe had conducted title searches, calculated the outstanding principal owed by the borrower, set the interest rate on additional loans to the borrower, prepared loan documents, and discussed those documents with the lender and borrower.

On appeal from the judgment in favor of Caspe, the Sixth District reviewed the trial court's finding that Caspe had arranged the loans such that the transactions were exempt from the usury law under the exception for loans arranged by a licensed real estate broker. The court of appeal found that the term "arranged" was "amorphous" and therefore the court looked to the legislative history and purpose of the real estate broker exemption to determine the Legislature's intent and thus the meaning of the term. (*Del Mar v. Caspe*, *supra*, 222 Cal.App.3d at p. 1324.) The appellate court concluded, based on the legislative history that the purpose of the exemption was to expand the sources of money available for nonconsumer loans, and to further that purpose the court concluded the exemption should be broadly construed. (*Ibid.*) To that end, the court relied on the "settled rule of statutory construction that unless otherwise clearly intended or indicated, statutes should be construed in accordance with the common or ordinary meaning of the language used, particularly when the law as so construed is consistent with the general policy of the state. [Citations.] . . . [¶] The common and ordinary meaning of the word 'arrange' includes: 'to put in correct, convenient, or desired order'; to put in order beforehand: make preparations for'; to effect [usually] by consulting: come to an agreement or understanding about: settle.' (Webster's New Internat. Dict. (3d ed. 1981) p. 120.)" (*Del Mar v. Caspe*, *supra*, 222 Cal.App.3d at p. 1328.) The appellate court concluded that substantial evidence supported the trial court's finding that Caspe had arranged the loans and because he was a licensed real estate broker the loans were exempt from the usury provision. (*Id.* at p. 1329.)

Although the Sixth District purported to broadly define the term "arranged" as used in Civil Code section 1916.1, a broad definition was unnecessary because even under the narrowest interpretation of that term, Caspe's involvement amounted to arranging a loan within the meaning of the statute. As previously noted, Caspe drafted loan documents, conducted title searches, calculated the outstanding principal owed by the borrower, set the interest rate on additional loans from the lender to the borrower, and discussed the loan documents with the lender and borrower. (*Del Mar v. Caspe*, *supra*, 222 Cal.App.3d at p. 1328.)

In contrast with Caspe's actions, the evidence in this case shows that Bravender's involvement was limited to preparing loan documents according

to instructions and on the terms provided by the parties, ordering title insurance, and dispersing funds, all in accordance with the parties' instructions. Because the facts are so clearly different, *Del Mar v. Caspe* is distinguishable and in our view inapposite.

Moreover, we do not share the Sixth District's view that the term "arranged" should be interpreted in accordance with its common, dictionary meaning. According to the dictionary definition quoted by the Sixth District, "arrange" means in its common sense " 'to put in correct, convenient, or desired order,' " (*Del Mar v. Caspe, supra*, 222 Cal.App.3d at p. 1328) as in arranging flowers or putting pages of a document in numerical order. The Legislature could not have intended to exempt a loan from the limitation on legal interest rates because a licensed real estate broker collated the pages of the loan document. Such limited involvement does not further the purpose of the broker exemption in that it does not make more money available for nonconsumer loans.

■ We agree that the phrase "arranged by" should be given its common or usual meaning, but in the context of Civil Code section 1916.1, which uses the phrase in reference to "any loan or forbearance," as in "any loan or forbearance made or arranged by a person licensed as a real estate broker." (Civ. Code, § 1916.1.) The statute even defines the phrase: "For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another . . . ." (*Ibid.*)

■ When viewed in the context of "arranging a loan," the phrase "arranged by" must refer to some conduct by a real estate broker, acting as a third party intermediary rather than as a party to the loan,[3] that causes a loan to be obtained or procured. Such conduct by a broker includes structuring the loan as the agent for the lender (*Chapman v. Farr* (1982) 132 Cal.App.3d 1021, 1026 [183 Cal.Rptr. 606]); setting the interest rate and points to be paid, setting the terms of the forbearance agreement, reviewing the loan and forbearance documents, conducting title searches, or drafting the terms of the loan (*Jones v. Kallman* (1988) 199 Cal.App.3d 131, 135 [244 Cal.Rptr. 609]; *Del Mar v. Caspe, supra*, 222 Cal.App.3d at p. 1328 [272 Cal.Rptr. 446]). A broader definition would result in absurd results—a licensed real estate broker who photocopies and collates the pages of a loan document and then charges a fee for that service will be held to have "arranged" a loan, which is exempt from the constitutional usury provision.

---

[3] See *Winnett v. Roberts* (1986) 179 Cal.App.3d 909 [225 Cal.Rptr. 82], which holds that the exemption does not apply to a loan negotiated by the borrower and lender, one of whom is a real estate broker; the broker must be a third party intermediary. (*Id.* at p. 919.)

Applying our definition to the facts of this case, Bravender, the real estate broker, did not engage in any conduct that resulted in a loan being obtained or procured. Bravender did not introduce Berger and Gibbo to each other; she was not involved in setting any of the terms of the loan; and she did not structure the loan. Although she prepared documents, namely the note and short form deed of trust, she did not draft any of the terms of the those documents but rather inserted in the appropriate spaces on prepared forms the terms the parties had agreed upon. Bravender's conduct in that regard was akin to that of a scribe who takes down or copies what others have said or agreed to. Contrary to Berger's assertion, Bravender did not search title to the property; she ordered a policy of title insurance as she was directed to do by the parties' instructions to escrow, pursuant to which a title company conducted the search. Bravender functioned as an escrow officer in that she performed the duties specified in the escrow instructions prepared by the parties. Because Bravender did not engage in any act that could be viewed as arranging a loan, we must conclude that the trial court erred in finding that the Berger loan was arranged by a licensed real estate broker within the meaning of the usury exemption.

In short, the loan was not exempt from the legal limit on interest rates. The 15 percent interest rate exceeded the legal rate of 10 percent and no exemption applied. Consequently, the loan from the Bergers to the Gibbos was usurious as a matter of law. "When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever. [Citations.]" (*Winnett v. Roberts, supra,* 179 Cal.App.3d at p. 921.) Berger contends that Gibbo defaulted on the loan in 1993 by failing to repay the principal plus accrued interest in accordance with the terms of the note. Therefore, Berger argues that even if the interest rate were usurious, because Gibbo had defaulted Berger is entitled to interest at the legal rate from the date of default in accordance with the so-called savings clause in the note. We disagree.

Berger accepted Gibbo's monthly interest payments and in doing so waived any default. By accepting those payments, Berger extended the due date on the principal from year to year. Berger did not make demand for payment on the note until March 2002 and did not initiate nonjudicial foreclosure until December 2002. As a result, the savings clause does not apply and the 15 percent interest rate is usurious.

As previously noted, the principal on the loan from Berger to Gibbo was $15,000. According to the evidence presented at trial, Gibbo made a total of

101 payments on the note totaling $19,125 through March 2002.[4] That amount exceeds the $15,000 principal amount of the loan and therefore Berger was not entitled to any money, having already received more than the principal of $15,000 from Gibbo. Consequently, judgment in favor of Berger on her cross-complaint for declaratory relief must be reversed.

Likewise, the trial court erred in entering judgment in favor of Berger on Gibbo's complaint. Because Berger had received all payments she was entitled to receive on the note, that debt was satisfied and any interest in the real property created under the deed of trust should have been extinguished. Consequently, the trial court should have quieted title in favor of Gibbo as requested in Gibbo's first cause of action. Gibbo also was entitled to recover from Berger the usurious interest Gibbo had paid on the note under her cause of action for unjust enrichment. (See 8 Miller & Starr, Cal. Real Estate (3d ed. 2001) §§ 21:36–21:37, pp. 153–162.) The interest should be calculated by deducting the $15,000 principal from the amount of money Gibbo actually had paid to Berger. The balance would represent interest which Gibbo is entitled to recover from Berger. Moreover, because Berger sought to foreclose on the note and thus initiated proceedings to that end against Gibbo, the statute of limitations does not apply and Gibbo may recover all interest actually paid. (*Id.* at p. 161.) Gibbo likewise may be entitled to treble damages under section 3 of the Usury Law, which authorizes a trial court to award three times the amount of interest paid to the lender for a period of one year. (Deering's Ann. Uncod. Measures 1919-3 (2004 ed.) p. 51.) This award is discretionary. Therefore, we remand to allow the trial court to exercise its discretion in addressing Gibbo's statutory damage request. (*Burr v. Capital Reserve Corp.* (1969) 71 Cal.2d 983, 994 [80 Cal.Rptr. 345, 458 P.2d 185].)[5]

## DISPOSITION

Judgment in favor of defendant Berger on plaintiff Gibbo's complaint and Berger's cross-complaint is reversed. The case is remanded to the trial court for further proceedings to determine the amount of damages to which Gibbo

---

[4] Gibbo testified that she made 100 payments of $187.50 and one payment of $375 for a total of $19,125.

[5] Gibbo is not entitled to damages under Civil Code section 2941 for Berger's failure to reconvey title to the property. Until the parties' respective rights and interests in the property were ascertained, Berger could retain the security for the debt. (See *Stephans v. Herman* (1964) 225 Cal.App.2d 671, 673–674 [37 Cal.Rptr. 746].) Consequently, Berger cannot be penalized for failing to reconvey title to Gibbo.

is entitled, in accordance with the views set out above, and to then enter judgment accordingly, on the complaint and cross-complaint. Gibbo shall recover her costs on appeal.

Richli, J., and Ward, J., concurred.