Filed 5/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES N. HARDWICK,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>v.<br><br>ALBERT P. WILCOX,<br><br>    Defendant, Cross-Complainant and Appellant. | A147944<br><br>(Alameda County<br>Super. Ct. No. RG13676258) |

## I. INTRODUCTION

Between 1999 and 2010, Albert Wilcox made a series of loans to James Hardwick. In 2013, Hardwick filed this action to recover usurious interest and prevent Wilcox from foreclosing on property securing his loans. Wilcox countersued for breach of contract and judicial foreclosure. The trial court entered judgment in favor of Hardwick, finding, among other things, that usurious interest payments made over the course of the relationship offset the principal debt, and that Hardwick could recover $227,235.83 in interest payments he made during the two years prior to the filing of this lawsuit.

On appeal, Wilcox contends the judgment must be reversed because (1) Hardwick waived his usury claim with respect to any loan payment he made prior to April 2012; and (2) the statute of limitations bars Hardwick's claim with respect to any loan that was paid off more than two years before this lawsuit was filed. We affirm the judgment.

## II. CALIFORNIA USURY LAW

" 'Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money.' [Citation.] A transaction is usurious if there is a loan

1

at greater than the legal rate of interest or an exaction at more than the legal rate for the forbearance of a debt or sum of money due.  [Citation.]" (*O'Connor v. Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 713.)

"California Constitution, article XV, section 1 limits the interest rate for a 'loan or forbearance' of money not primarily for personal, family or household purposes, to the higher of: (1) 10 percent per annum or (2) 5 percent plus the rate of interest prevailing on the 25th day of the month preceding the earlier of the date of the extension of the contract to make the loan or forbearance or the date of making the loan or forbearance, established by the Federal Reserve Bank of San Francisco on advances to member banks under sections 13 and 13(1) of the Federal Reserve Act.  [Citation.]" (*DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 733; see also *Southwest Concrete Products v. Gosh Construction Corp.* (1990) 51 Cal.3d 701, 705 ["The law of usury in California is based upon California Constitution article XV, section 1, which limits the interest payable '[f]or any loan or forbearance of any money.' "  (Fn. omitted.)].)

" 'When a loan is usurious, the creditor is entitled to repayment of the principal sum only.  He is entitled to no interest whatsoever.  [Citations.]'  [Citation.]" (*Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 403.)  "The attempt to exact the usurious rate of interest renders the interest provisions of a note void.  [Citations.]" (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122-123.)  Furthermore, interest payments that were made at the usurious rate should be credited against the principal balance in any action to collect on the note.  (*Westman v. Dye* (1931) 214 Cal. 28, 31-38 (*Westman*); *District Bond Co. v. Haley* (1935) 2 Cal.2d 308, 311; *Paillet v. Vroman* (1942) 52 Cal.App.2d 297, 306-308; *Shirley v. Britt* (1957) 152 Cal.App.2d 666, 670 (*Shirley*).)

### III.  STATEMENT OF FACTS

#### A.  Background

As noted, Wilcox made several loans to Hardwick over a 10-year period.  Some of these loans were made by Wilcox in his individual capacity and others were made by "Pensco *fbo* Wilcox," a corporation that Wilcox used as a custodian for his self-directed

Individual Retirement Account (IRA).  In the trial court Wilcox conceded that he is the real party in interest with respect to all of these loans.

All of the loans were evidenced by promissory notes or amendments to promissory notes and secured by deeds of trust to one or more of the following assets: (1) a commercial property consisting of six condominium units in San Leandro, referred to as the San Leandro property; (2) a retail shopping center in Fremont, referred to as the Cabrillo Center; and (3) a commercial property in Fremont, referred to as the Cabrillo Market.

In the lower court, the parties stipulated to a reference system which identified nine promissory notes by number (note #1 through note #9), and then used lower case letters to identify amendments to some of those notes (e.g., note #2a, note #2b, etc.).  For clarity and convenience, we will continue to use this reference system.

**Note #1**, executed December 7, 1999, was a $500,000 loan from Pensco *fbo* Wilcox to Hardwick.  Note #1 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on November 10, 2004, and was secured by deeds of trust on the San Leandro property and the Cabrillo Center.

**Note #2**, executed June 15, 2001, was a $200,000 loan from Wilcox individually to Hardwick.  Note # 2 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on September 25, 2001, and was secured by a deed of trust on the Cabrillo Market.

**Note #3**, executed October 11, 2001, was a $120,000 loan from Wilcox individually to Hardwick.  Note #3 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on December 31, 2001, and was secured by a deed of trust on the Cabrillo Center.

On May 14, 2002, Wilcox and Hardwick agreed to convert $42,000 of accrued unpaid interest and late fees on outstanding notes to principal debt.  That day, they executed **note #2a**, which increased the amount of the note #2 principal to $242,000.  Note #2a and **note #3a**, which was also executed on May 14, changed the maturity date for note #2 and note #3 to May 1, 2003.

On November 19, 2002, Wilcox loaned Hardwick an additional $100,000. This loan was evidenced by **note #2b**, which increased the principal amount of note #2a to $342,000, and changed the maturity date to November 1, 2003.

On January 8, 2003, Wilcox and Hardwick agreed to roll over note #2b ($342,000) and note #3a ($120,000) into **note #2c,** which established a principal debt of $462,000. As part of this agreement, Wilcox released the deed of trust on the Cabrillo Center that secured the note #3a loan.

**Note #4**, executed December 31, 2003, was a $500,000 loan from Pensco *fbo* Wilcox to Hardwick. Note #4 charged interest at a rate of 11.0 percent per annum, required interest only monthly payments to Wilcox, matured on December 31, 2008, and was secured by a deed of trust on the Cabrillo Center.

The parties agreed to use the $500,000 principal loan evidenced by note #4 to pay off note #1. Accordingly, in connection with this transaction, Wilcox released the deed of trust on the San Leandro property that secured note #1.

**Note #5**, executed on November 8, 2004, was a $55,000 loan from Pensco *fbo* Wilcox to Hardwick. Note #5 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on November 8, 2009, and was secured by a deed of trust on the Cabrillo Center.

On March 28, 2005, Wilcox loaned Hardwick $200,000, which was evidenced by **note #2d**. Note #2d amended note #2c by increasing the amount of the principal debt to $662,000 and changing the maturity date to March 25, 2009.

**Note #6**, executed September 15, 2008, was a $45,000 loan from Pensco *fbo* Wilcox to Hardwick. Note #6 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on September 15, 2013, and was secured by a deed of trust on the Cabrillo Center.

On March 21, 2009, the parties executed **note #4a,** which changed the maturity date of note #4 to March 31, 2012.

**Note #7**, executed March 23, 2009, was a $150,000 loan from Pensco *fbo* Wilcox to Hardwick. Note #7 charged interest at a rate of 12.0 percent per annum, required

interest only monthly payments to Wilcox, matured on April 1, 2012, and was secured by a deed of trust on the Cabrillo Center.

The parties agreed to use the principal loan evidenced by note #7 to: (1) rollover and effectively pay off note #5 ($55,000); (2) rollover and effectively pay off note #6 ($45,000); and (3) provide additional funding to Hardwick ($27,184). The parties also agreed to convert accrued unpaid interest and late fees on outstanding notes ($22,816) to principal debt evidenced by note #7. In connection with the execution of note #7, Wilcox released the deed of trust on the Cabrillo Center that secured note #5.

**Note #8**, executed March 23, 2009, was a $662,000 loan from Wilcox individually to Hardwick. Note #8 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on February 24, 2012, and was secured by deeds of trust on the Cabrillo Market and the Cabrillo Center.

The parties agreed to use the principal loan evidenced by note #8 to rollover and thus effectively pay off note #2d ($662,000). In connection with the execution of note #8, Wilcox released the deed of trust on the Cabrillo Market that secured note #2 and its amendments.

**Note #9**, executed on February 22, 2010, was an $800,000 loan from Pensco *fbo* Wilcox to Hardwick. Note #9 charged interest at a rate of 12.0 percent per annum, required interest only monthly payments to Wilcox, matured on December 31, 2012, and was secured by a deed of trust on the Cabrillo Center.

The parties agreed to use the principal loan evidenced by note #9 to: (1) rollover and effectively pay off note #4a ($500,000); (2) rollover and thus effectively pay off note #7 ($150,000); (3) provide additional funding to Hardwick ($81,490). The parties also agreed that accrued unpaid interest and late fees on other notes ($68,510) would be converted to principal and added to the face amount of principal of note # 9. In connection with the execution of note #9, Wilcox released the two deeds of trust on the Cabrillo Market that secured note #4a and note #7 respectively.

Thus, by February 22, 2010, all of the principal loans that Wilcox had made to Hardwick in the previous 10 years had been rolled over into either note #8 or note #9.

5

The direct loans from Wilcox were all rolled into note #8, which matured on February 24, 2012. And the loans from Wilcox's IRA account were rolled into note #9, which matured on December 31, 2012.

### B. The Forbearance Agreement

In April 2012, Wilcox initiated nonjudicial foreclosure by filing a notice of default on note #8. Hardwick requested additional time to bring the loan current. Wilcox consulted with counsel who advised him to require Hardwick to sign a forbearance agreement.

On August 1, 2012, Wilcox and Hardwick executed a "Forbearance Agreement and Agreement to Extend Final Payment Due on Note" (the Forbearance Agreement). The Forbearance Agreement was divided in two parts, Recitals and Terms and Conditions. The Recitals referenced only the last two loans that Wilcox made to Hardwick, referring to note #8 as the "First Loan" or the "First Note" and note #9 as the "Second Loan" or the "Second Note." According to the Recitals, Wilcox initiated a nonjudicial foreclosure proceeding after the First Note matured on February 24, 2012; Hardwick responded by requesting an extension of time to pay off the First Loan until December 31, 2012; and Wilcox agreed to grant the extension pursuant to specified terms and conditions.

The essential term of the Forbearance Agreement was that the time for Hardwick to pay off the First Loan (note #8) would be extended to December 31, 2012, provided that Hardwick made timely monthly interest payments on both the First and Second Notes. The parties further agreed that if Hardwick failed to make a timely interest payment under either loan, Wilcox could proceed with foreclosure pursuant to notices that had already been filed; that he could schedule and continue a sale of either property securing the loans; and that acceptance of a late payment did not constitute a waiver of these rights.

The Forbearance Agreement also contained a "RELEASE" of Hardwick's past and future claims against Wilcox. This broad release was divided into three somewhat redundant paragraphs, suggesting the language may have been cobbled together from

6

other contracts. The first paragraph stated: "Borrower acknowledges and agrees that as of the date of this Agreement, none of the obligations under the Notes or the payment of the amounts owing thereunder, are subject to any right of offset, defense or counterclaim of any kind or nature whatsoever. Borrower . . . hereby fully and forever waives, releases, acquits, and discharges Lender . . . from any and all liabilities, claims, demands, defenses, actions, causes of action, rights . . . whatsoever of any kind and nature (collectively 'Claims'), known or unknown, which Borrower may now or hereafter have against Lender, existing or occurring prior to or as of the execution and delivery of this Agreement by Lender and Borrowers, and which in any way, directly or indirectly relate to, result from or arise out of the Note, or this Agreement. Borrowers hereby waive the provisions of CCP § 1542."[1]

The second paragraph of the release contained a waiver of Hardwick's rights under Civil Code section 1542. Section 1542 states: "A general release does not extend to claims the creditor does not know or suspect to exist in his . . . favor at the time of execution of the release, which if known by him . . . must have materially affected his . . . settlement with the debtor." This statutory language was quoted in the agreement in all capital letters.

The final paragraph of the release stated: "Borrower acknowledges that he is aware that he may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that are known or believed to be true, as to the matters released herein. Nevertheless, it is the intention of Borrower, through this Agreement, to fully, finally and forever release all such matters and all claims related thereto that do now exist, may exist, or hereafter are found to exist (subject to the limitations set forth herein). In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such additional or different claims or

---

[1] The reference to "CCP" section 1542 was an error, as that statute is a provision of the Unclaimed Property Law. The release language intermixed the singular and plural when referring to the borrower and the note.

facts. In entering into this Agreement, the parties herein do not rely on any statement, representation or promise of any other party, except as expressly stated in this Agreement. This release applies to both of the Loans."

## C. The Present Action

### 1. The Pleadings

On April 19, 2013, Hardwick filed this lawsuit to recover usurious interest and protect his collateral. On April 23, Wilcox filed a notice of trustee's sale in connection with his prior notice of default on note #8. The following month, Hardwick filed a first amended complaint (FAC), alleging causes of action for recovery of usurious interest payments pursuant to a common count for money had and received; for cancellation of instrument, i.e., the release in the Forbearance Agreement; for failure to reconvey title; and for declaratory and injunctive relief to quiet title and prevent the nonjudicial foreclosure proceeding.

On May 29, 2013, the court issued a preliminary injunction, staying and/or enjoining nonjudicial foreclosure of the properties securing note #8 and note #9.

In June 2013, Wilcox filed a cross-complaint, which he amended a year later. In his first amended cross-complaint (FACC), Wilcox alleged causes of action for breach of note #8 and note #9; judicial foreclosure as to both notes; specific performance as to both notes; elder abuse; and declaratory relief. The declaratory relief claim pertained to the validity of the release in the Forbearance Agreement; Wilcox sought a judicial declaration that Hardwick waived his right to recover any usurious interest that was paid prior to August 1, 2012, the date the Forbearance Agreement was executed.

### 2. The Court Trial

The parties agreed that the issue whether Hardwick waived his usury claim by signing the Forbearance Agreement should be decided first. Accordingly, they stipulated to a bifurcated court trial on Hardwick's cause of action for cancelation of instrument and Wilcox's cause of action for declaratory relief.

The court trial was held on September 15, 2014. The court admitted evidence documenting the parties' lending relationship pertaining to note #1 through note #9. Both

8

parties acknowledged that every loan bore an interest rate of 12 percent except for one that bore an interest rate of 11 percent. For purposes of this phase of the trial only, the court assumed without deciding that all of the notes violated California usury law and focused exclusively on the question whether "claims of usury have been waived."

Hardwick and Wilcox, the only trial witnesses, testified about the loans and the Forbearance Agreement they signed in August 2012. Both men testified that they were unaware of the usury law when they signed the Forbearance Agreement. Wilcox also testified that the sole purpose of the agreement was to extend the due date of the loans.

On November 26, 2014, the trial court filed a "Final Statement of Decision and Order on Bifurcated Issues" (the SOD). In that six-page order, the court summarized the pertinent facts and procedural history, and reiterated that the sole issue was whether the Forbearance Agreement contained a valid waiver of usury violations. Employing a two-step analysis, the court ultimately concluded that Hardwick did not waive his usury claim.

First, the court found that construing the release as a waiver of usury would violate public policy. (Citing Civ. Code, § 1668; *Tiedje v. Aluminum Taper Milling Co.* (1956) 46 Cal.2d 450.) This conclusion was supported by findings of fact, including that the Forbearance Agreement was (1) a "descendant obligation growing out of the original usurious loans"; (2) an extension of that original usurious transaction; and (3) usurious in and of itself. Under these circumstances, the court found, interpreting the release as a waiver of a usury claim would exempt Wilcox from the consequences of his violation of the usury law.

Second, the court found that even if Hardwick's usury claim could be waived in the Forbearance Agreement, the release was not a knowing waiver of a usury claim, but rather a perpetuation of a violation of the usury law. This fact distinguished "dated case law" relied on by Wilcox which involved settlements of a known usury claim. (See, e.g., *Credit Finance Corp. v. Mox* (1932) 125 Cal.App. 583 (*Mox*).) In this case, the Forbearance Agreement did not settle or otherwise substantively dispose of a usury claim. Rather, by all accounts, it was "an agreement to extend the due date of the loan."

9

At the conclusion of the SOD, the court stated: "As the court finds that usury was not waived, the court grants relief on Hardwick's second cause of action for cancellation of instrument in the [FAC] and declares that the waiver and release language in the Forbearance Agreement is invalid and unenforceable. Relief on Wilcox's Eighth Cause of Action in his [FACC] is denied."

### 3. The Summary Judgment Rulings

At a May 2015 pretrial hearing on the jury phase of this case, the court postponed trial indefinitely so the parties could file cross-motions for summary judgment or summary adjudication. Both parties filed their motions on June 30, the same day they filed a stipulation outlining the undisputed facts pertaining to their lending history.[2]

Hardwick sought summary judgment or summary adjudication of his claims that (1) Hardwick paid off note #8 and note #9 because the usurious interest he paid on notes #1 through #9 were not actually interest payments but reductions of the principal debts; and (2) Wilcox must refund interest payments Hardwick made on notes #8 and 9 within two years prior to the filing of his original complaint in this case. Wilcox sought summary judgment or summary adjudication of his claims that (1) Hardwick defaulted on note #8 and note #9; and (2) Hardwick's usury claims as to note #1 through note #7 are barred by the statute of limitations.

On August 19, 2015, the trial court denied Wilcox's motion in its entirety and granted part of Hardwick's motion. Because most of the material facts were covered by the stipulation, the summary judgment rulings were primarily legal in nature. According to the court, the key issue was whether each numbered note, especially note #8 and note #9, was a new agreement that purged the prior usury, or whether they were renewals of the prior usurious loan agreements.

The court concluded that note #8 and note #9 "are part of a series of notes that simply renewed the debt evidenced by the predecessor usurious notes," relying primarily

---

[2] This stipulation, which established the reference system for distinguishing between the multiple promissory notes and amendments, is the source of the background information in our Statement of Facts.

10

on the following undisputed facts: First, every note in the series of 15 promissory notes and/or modifications of promissory notes that Hardwick executed in favor of Wilcox "contained a usurious, and therefore legally unenforceable, interest rate." Second, the principal amounts owed on note #8 and note #9 "include unpaid usurious interest accrued from the prior Notes." Third, Hardwick paid a total of $1,555,909.83 on the notes at issue in this case, none of which had reduced the principal balance of any note.

The court then concluded that Hardwick paid off note #8 and note #9 because the undisputed evidence showed that Hardwick's payments on the usurious loans totaled $1,555,909.83 and the combined principal amount of the two remaining loans was $1,462,000. As legal support for this conclusion, the court applied the rule that an "attempt to extract usurious interest renders the interest provisions of a note void, such that all payments made on the note go toward reducing its principal." (Citing, e.g., *Epstein v. Frank*, *supra*, 125 Cal.App.3d at pp. 122-123.)

In reaching these conclusions, the court found that Wilcox's statute of limitations theory was "misplaced" because Hardwick did not seek an affirmative recovery of the interest paid on note #1 through note #7. Instead, those payments could properly be used as a set off against the principal debt because notes #8 and #9 are successors to notes #1 through #7 in a "series of usurious notes that constitute renewals of the same debt." As support for this conclusion, the court applied the rule that in an action to collect a usurious debt, the usurious payments are not barred by the statute of limitations so long as the usurious loan remains unpaid. (Citing *Shirley*, *supra*, 152 Cal.App.2d 666.)

The trial court also found that in addition to the offset, Hardwick could recover "any usurious interest paid to Wilcox on Note 8 and Note 9 in the two years before this case was filed." (Citing *Stock v. Meek* (1950) 35 Cal.2d 809, 817 (*Stock*).) In his summary judgment papers, Hardwick argued that the undisputed loan history established that he was entitled to recover $227,235.83 (plus interest). In its summary judgment order, however, the trial court deferred ruling on the amount of the award because it did not understand how Hardwick's calculations worked.

11

Because the summary judgment rulings did not resolve all the issues or causes of action, the court's order concluded as follows: "As part of any final judgment in this case following trial or otherwise, the judgment will provide that Hardwick owes Wilcox nothing on any of the Notes that are the subject of this action, and Hardwick owns the real property that secured those Notes free and clear of any deed of trust in favor of Wilcox. The judgment shall further provide that Wilcox shall recover nothing on his First, Second, Fourth, and Fifth Causes of Action in his First Amended Cross-Complaint."

### 4. Judgment

On January 7, 2016, Hardwick filed a motion for judgment on the pleadings; an order ascertaining the amount of recovery under the summarily adjudicated common count for recovery of usurious interest; dismissal of pending claims and causes of action; and entry of final judgment. On February 16, 2016, the court granted Hardwick's motion as unopposed and entered a final judgment.

The judgment dismissed all causes of action in Wilcox's FACC with prejudice, with the exception of his cause of action for elder abuse, which had already been voluntarily dismissed without prejudice in December 2015. The judgment further ordered that Wilcox was to take nothing from Hardwick in this action, stating: "Note # 8, which is the last note in the Wilcox (individually) series, and Note # 9, which is the last note in the Pensco *fbo* Wilcox series, have each been paid in full by Hardwick by offset *pro tanto* of usurious interest paid by Hardwick in each series, and the principal debt of these promissory notes has been extinguished; therefore, Hardwick owes Wilcox nothing on any of the Notes that are the subject of this action."

The judgment awarded Hardwick the following relief: On his first cause of action, to recover usurious interest, Hardwick was awarded $227,235.83, plus prejudgment interest. On his second cause of action for cancellation of instrument, judgment was entered in favor of Hardwick pursuant to the SOD, which established that the waiver and release language in the Forbearance Agreement was "invalid and unenforceable because of the taint of usury." On his remaining causes of action for declaratory and equitable

12

relief, the court entered judgment in favor of Hardwick, ordering Wilcox to take all proper and necessary steps to accomplish a reconveyance of the deeds of trust and to quiet Hardwick's title to the properties he used to secure note #8 and note #9. Hardwick was awarded reasonable attorney fees and costs of suit.

## IV.  DISCUSSION

### A.  Hardwick Did Not Waive His Usury Claim

Wilcox contends that the trial court committed a reversible error of law by concluding that a usury claim can never be released. This argument mischaracterizes the trial court's ruling. As discussed above, the court found that the release provision in the Forbearance Agreement did not constitute a waiver of Hardwick's usury claim against Wilcox because (1) exempting Wilcox from the consequences of usury would violate public policy, and (2) the parties did not know or intend that the release would waive a usury claim. As we explain below, these findings, made following a court trial, were legally and factually sound.

Wilcox cites no authority addressing the specific question whether a party can ever waive the protections of the usury law. It is settled, however, that such protections cannot be "waived by the voluntary payment of excessive interest by the borrower." (*Stock*, *supra*, 35 Cal.2d at p. 817.) As the *Stock* court explained: "The theory of [usury] law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them. Accordingly, 'voluntary' payments of interest do not waive the rights of the payors. 'Payments of usury are not considered voluntary but are deemed to be made under restraint.' [Citation.] If no loophole is provided for lenders, and all borrowers save fraudulent ones are protected, usurious transactions will be discouraged." (*Ibid*.) For similar reasons, the *Stock* court found, the related doctrine of "*in pari delicto*" does not apply to prevent a borrower from recovering usurious interest payments. (*Id*. at p. 818; see also *Heald v. Friis-Hansen* (1959) 52 Cal.2d 834, 837 ["[i]n the absence of fraud by the borrower, the parties to a usurious transaction are not *in pari delicto*"].)

13

Thus, as a starting point, it is clear that Hardwick did not waive the protections of the usury law either by executing usurious notes, paying usurious interest, or signing a forbearance agreement that obligated him to continue to make usurious interest payments. Nevertheless, Wilcox contends that Hardwick did waive those protections in this case because the Forbearance Agreement also contained a unilateral general release of the borrower's claims against the lender.

First, the record supports the trial court's finding that construing this particular release as a waiver of usury would violate public policy. Section 1668 of the Civil Code states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." At trial, Hardwick stipulated that the rate of interest he set in every one of the notes in the series of notes at issue in this case exceeded the constitutional maximum rate. This concession and other evidence regarding the interconnection between the series of 15 notes and amendments to the notes substantially supports the trial court's finding that the Forbearance Agreement was an extension of the underlying usurious loan transaction. Thus, construing the unilateral general release in that agreement as a waiver of usury would allow Wilcox to escape the consequences of his violation of the law by permitting him to benefit from his illegal contract and retain the usurious interest he extracted from Hardwick.

Turning to the second prong of the trial court's analysis, assuming that policy concerns could be overcome, the court found that the unilateral release did not constitute a knowing waiver of Hardwick's usury claim. This finding was relevant because Wilcox attempted to invoke the proposition that a usury claim can be released in a settlement agreement. (See *Mox*, *supra*, 125 Cal.App. at p. 586.) In the present case, the factual evidence showed that the release was not part of a settlement of a usury claim or of any other dispute. Rather, the sole purpose of the Forbearance Agreement was to extend the due dates for the loans.

14

On appeal, Wilcox contends that his interpretation of the release does not violate public policy because it would not exempt him from usury, but only extinguish an obligation that he previously owed to Hardwick.  Semantics aside, construing the release as a waiver of a usury claim would undermine the "theory" of California usury law, which is "that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them."  (*Stock*, *supra*, 35 Cal.2d at p. 817.)

Wilcox cites *Casey v. Proctor* (1963) 59 Cal.2d 97, 111 (*Casey*) for the following proposition: "[T]he policy of the law is to encourage out-of-court settlements.  To further this policy, the parties to a dispute should be encouraged to negotiate settlements and to enter into releases."  First, the policy favoring out of court settlements does not benefit Wilcox because the release in this case was not part of a settlement agreement.  Second, *Casey*, *supra*, 59 Cal.2d 97 has nothing to do with usury law.  Third, the *Casey* court held that a general release in a settlement agreement arising out of a car accident did not bar a personal injury claim that plaintiff did not know he had or intend to release when he executed the release.  In the present case, the undisputed trial evidence established that neither party was aware of Hardwick's usury claim when the Forbearance Agreement was executed.

Wilcox argues that it is not relevant whether the parties knew about or intended to waive usury because the release language unequivocally and unambiguously applied to all known and unknown claims.  As support for this proposition, Wilcox cites *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1167, which involved a general release of known and unknown claims that was signed as part of a settlement of an action to collect unpaid legal fees.  Again though, the present case raises a different issue because the Forbearance Agreement was not a settlement agreement but an illegal contract that itself violated the usury law.

Wilcox contends that the right to recover usury damages is just like any other claim that is subject to being released.  As support for this argument, Wilcox relies on three cases in which courts allegedly upheld "settlement and releases of usury."  (*Mox,*

15

*supra*, 125 Cal.App. 583; *Lamb v. Herndon* (1929) 97 Cal.App.193 (*Lamb*); *Wooton v. Coerber* (1963) 213 Cal.App.2d 142 (*Wooton*).) The cases are inapposite.

In *Mox*, the parties had a bona fide dispute as to whether the loans in question were usurious, and resolved that dispute in a settlement agreement. Plaintiff unsuccessfully challenged the settlement agreement as being tainted by the underlying usurious loan. (*Mox*, *supra*, 125 Cal.App. at p. 585.) The Court of Appeal affirmed, concluding that, in the absence of fraud or undue influence, a compromise agreement settling a dispute on the issue of usury is determinative of the parties' rights, and the debtor's right to challenge a previous transaction as usurious ceases to exist. (*Id*. at p. 586.) Here, in contrast, there was neither a preexisting dispute between the parties as to whether the loans were usurious nor a settlement agreement in compromise of such a dispute. *Lamb* and *Wooton* did not involve usurious loans. In *Lamb*, the plaintiffs claimed that a settlement reached with defendants was tainted by usury and unenforceable. Plaintiffs alleged that defendants had loaned plaintiffs $12,500 to purchase property and then exacted a bonus of $12,000 for the loan. (*Lamb*, *supra*, 97 Cal.App. at p. 198.) The court found, however, that the bonus was not for the loan but for defendants' additional agreement to finance and carry out the remodeling of the building on the property, and to demand no payment until the work was completed. Therefore, no usury was involved. (*Id*. at p. 200.) In *Wooton*, the parties to a settlement disputed whether monies paid by defendants to plaintiffs in the underlying transaction was a loan or a joint venture. The court found it was a joint venture and therefore the usury laws did not apply. (*Wooton*, *supra*, 213 Cal.App.2d at p. 148.)

For all these reasons, we affirm the finding by the trier of fact that Hardwick did not waive his usury claim against Wilcox by executing the Forbearance Agreement.

## B. Wilcox's Statute of Limitations Defense Was Properly Denied

A two-year statute of limitations applies to Hardwick's cause of action to recover usurious interest. (Code Civ. Proc., § 339; *Stock*, *supra*, 35 Cal.2d at p. 817.)[3] However, "[t]he cause of action to recover usurious interest does not accrue until the debtor actually pays excess interest. [Citation.] Since payments on a usurious note are deemed to apply first to principal, the statute of limitations does not begin to run until the debtor has paid the entire principal amount of the debt. [Citation.]" (*Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000.) In other words, "no part of usurious payment is barred by the statute of limitations as long as the usurious loan remains unpaid. [Citation.]" (*Forte v. Nolfi* (1972) 25 Cal.App.3d 656, 691, fn. 11.)

In light of these established rules, Wilcox concedes that Hardwick is not barred from recovering usurious interest payments on note #8 and note #9 because those notes were unpaid when this lawsuit was filed. However, Wilcox contends that the trial court's award of $1,211,649 in interest payments cannot stand because it is not limited to notes #8 and #9, but also includes payments that were made on note #1 through note #7, notwithstanding that those notes were all paid off more than two years prior to the filing of Hardwick's original complaint in this case. In making this claim, Wilcox not only conflates but misconstrues two sets of trial court rulings.

First, the trial court found that Hardwick was entitled to offset all usurious interest he paid on inter-related notes against the principal debt evidenced by note #8 and note #9. *Shirley*, *supra*, 152 Cal.App.2d at pages 669-670, cited by the trial court, summarizes the following rules for offsetting usurious interest against principal debt: (1) "the payments of usurious interest may be set off against the principal debt in actions brought to collect the latter"; (2) "where a renewal note is given containing and providing for usurious

---

[3] "When usurious interest has been exacted the debtor is entitled to recover treble the interest paid if he sues within one year (Deering's Gen. Laws (1918) Act 3757, § 3; Stats. 1919, p. lxxxiii) or the bare amount of all interest paid if suit is brought within two years []. [Citation.]" (*Baruch Inv. Co. v. Huntoon* (1967) 257 Cal.App.2d 485, 490.) Hardwick was not awarded treble damages in this case.

17

interest, or where usurious interest is exacted, the defense of usury, not only in the particular note sued upon, but in all of its predecessors where it exists, if it exists at all, is available to the maker as a defense"; (3) "as between the parties to the transaction or holders with knowledge all payments of usurious interest made on a series of notes will be applied to the extinguishment of the debt and this even though the parties have treated such payments as payment of interest"; (4) "the instant a payment is made of usurious interest it is applied to the principal, and the principal indebtedness at the time of such payment is reduced to the extent thereof"; and (5) "no part of the usurious payments is barred by the statute of limitations as long as the usurious loan remains unpaid."

Applying these rules to the summary judgment evidence, the trial court concluded that Hardwick paid off note #8 and note #9 because the total usurious interest payments exceeded the total principal debt evidenced by the two notes. In reaching this conclusion, the court found that note #8 and #9 were both "part of a series of notes that simply renewed the debt evidenced by the predecessor usurious notes." This was a finding of fact supported by the undisputed evidence we have summarized above, which demonstrates that every promissory note and amendment to a promissory note contained a usurious interest provision; every principal debt evidenced by note #1 through note #7 was rolled over into either note #8 or note #9; and unpaid usurious interest charges from these prior notes was also converted to principal and combined into note #8 and note #9.

As the trial court explained in its summary judgment order, the setoff was not an award of affirmative relief to Hardwick, but a defense to Wilcox's causes of action to recover on notes #8 and #9. " 'Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt. [Citations.]' " (*Shirley*, *supra*, 152 Cal.App.2d at p. 670.)

Thus, contrary to Wilcox's argument on appeal, Hardwick did not recover $1,211,649 in interest. Rather, those interest payments reduced the principal debt at the time they were paid. However, the court did make a separate set of findings pursuant to

18

which it awarded Wilcox $227,235.83 (plus interest). Making that award did not violate the statute of limitations either.

The trial court found that in addition to the offset, Hardwick was entitled to recover "any usurious interest paid to Wilcox on Note 8 and Note 9 in the two years before this case was filed." (Citing *Stock*, *supra*, 35 Cal.2d at p. 817.) As noted in our factual summary, during the summary judgment proceedings there was some confusion about how to calculate the amount of the award. Apparently, that issue was resolved in Hardwick's unopposed motion for judgment on the pleadings and other related relief, because the final judgment awarded Hardwick $227,235.83, plus interest, on his first cause of action to recover usurious interest.

Although neither party addresses this issue in their appellate briefs, Hardwick's calculation of $227,235.83 was explained and justified in his summary judgment papers. First, Hardwick calculated a principal debt amount for note #8 and note #9, which included the principal from each prior note or amended note that had been rolled over, but excluded unpaid interest and late fees that had been converted to principal. Then, Hardwick calculated payoff dates for note #8 and note #9 by tracing and crediting interest payments on the debt to Wilcox individually against the principal balance of note #8 and the payments on the debt to Wilcox's IRA against the principal balance of note #9. Applying this formula, Hardwick demonstrated that note #8 was paid off on July 27, 2011, and note #9 was paid off on July 6, 2012. The stipulated facts established that after July 27, 2011, interest payments on note #8 totaled $122,933.31, and that after July 6, 2012, interest payments on note #9 totaled $104,302.52. All of these payments were made within two years of the April 2013 filing date of Hardwick's original complaint. Accordingly, Hardwick requested reimbursement of $227,235.83 (plus interest).

Thus, the appellate record affirmatively demonstrates that the monetary award Hardwick received on his first cause of action reimbursed him for payments he made after the pay-off dates for the respective notes *and* within the two-year limitations period. Wilcox does not argue otherwise or even address this monetary payment.

19

Wilcox does contend, however, that the entire judgment is flawed because the series of notes at issue in this case were not renewals as a matter of law. We disagree.

" ' "If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced." ' [Citation.]" (*Whittemore Homes, Inc. v. Fleishman* (1961) 190 Cal.App.2d 554, 560, quoting *Westman*, *supra*, 214 Cal. at p. 38; see also *Williams v. Reed* (1957) 48 Cal.2d 57, 68.) In the present case, the taint of usury is easily traced from the original notes through every subsequent note and amendment into note #8 and note #9. As discussed, the payments Hardwick made over the course of the lending relationship were all usurious interest payments; none of the payments was used to pay down any principal. Instead, the principal loans were simply rolled over along with unpaid interest and late fees into the subsequent notes.

Wilcox argues a renewal means—and only means—an extension of a note's maturity date, and, in this case, notes #1 through #7 were not renewals because the parties stipulated they were separate notes that were essentially paid off and extinguished.

Wilcox's narrow definition of a loan renewal is inconsistent with the governing law discussed above and correctly applied by the trial court. Wilcox spends considerable time discussing three cases in which an extension of the maturity date of a usurious loan was characterized as a renewal. (See *Westman*, *supra*, 214 Cal.2d 28; *Aspeitia v. California Trust Co.* (1958) 158 Cal.App.2d 150; *Simmons v. Patrick* (1962) 211 Cal.App.2d 383.) However, these cases do not help Wilcox because they do not adopt his narrow definition of a renewal, or even address that issue.

Furthermore, Wilcox's account of the stipulated facts is misleading and incomplete. Every note and amendment in the series of notes comprising the two usurious transactions pertained to a principal debt that was not repaid (except by operation of the offset rules). Notes may have been canceled but the underlying loans

20

were rolled over and subsumed by a subsequent note or amendment, and the due dates for payment of principal were all extended until, eventually, all of the loans were consolidated into either note #8 or note #9.  Furthermore, every version of every note charged usurious interest.  Under these circumstances, the original taint of usury attached to "the whole family of consecutive obligations and securities growing out of the original vicious transaction[s]."  (*Whittemore Homes, Inc. v. Fleishman*, *supra,* 190 Cal.App.2d at p. 560.)

## V.  DISPOSITION

The judgment is affirmed.  Hardwick is awarded costs on appeal.

_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
STREETER, J.


A147944, *Hardwick v. Wilcox*

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Ioana Petrou |
| Counsel for Appellant: | Berokim & Duel, Kousha Berokim |
| Counsel for Respondent: | Law Office of Richard van't Rood, Richard van't Rood |
| | Craig J. Bassett |

A147944, *Hardwick v. Wilcox*