Filed 8/27/21; Certified for Publication 9/17/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| REMI KORCHEMNY, Plaintiff and Appellant, v. DMITRY PITERMAN et al., Defendants and Respondents. | A155483 A157716 (Alameda County Super. Ct. Nos. RG-15796802 & RG-15796804) |

This opinion primarily addresses two consolidated appeals by Remi Korchemny, the payee on two promissory notes, who sued Milanendra (Milan) Piterman, her trust, and her ex-husband Dmitry Piterman on those notes. The first appeal is from a summary judgment obtained by Milan and her trust, who demonstrated that the notes were usurious, and that the payments made on them showed they had been paid in full. The second is from an order awarding Milan and the trust over $318,000 in attorney fees.

Dmitry, who was one of the obligors on the notes, filed a cross-complaint against Milan and the trust, on which Milan and the trust obtained judgment on the pleadings against Dmitry. Dmitry has filed what

1

he calls a "cross-appellant's brief" in support of his appeal from that judgment.

We conclude that neither of Korchemny's appeals has merit, nor does Dmitry's "cross-appeal," and we affirm both judgments and the attorney fee order.

## BACKGROUND

**The General Setting, the Parties, and the Participants**

Milan and Dmitry Piterman were married in 1990. In December 2013, Milan filed a petition for legal separation, beginning a proceeding that respondents' brief calls a "highly-contentious marital dissolution action," a highly contentious action that has generated a 17-page register of actions—an action as best we understand it that continues to this day.

Remi Korchemny (Korchemny), a close friend of Dmitry's, filed a lawsuit against Dmitry, Milan, and Milan's Freedom Trust (the trust) based on two promissory notes. Dmitry filed a cross-complaint against Milan and the trust. After years of extensive litigation, Milan and the trust obtained summary judgment against Korchemny based on their affirmative defense of usury. They were later awarded attorney fees. Korchemny appealed both the judgment and the attorney fee order and is the primary appellant in both appeals here. Milan and the trust are the respondents and when referred to collectively will sometimes be called respondents.

Following their summary judgment, respondents obtained judgment on the pleadings against Dmitry on his cross-complaint. Dmitry appealed, and has filed what he calls a "cross-appellant's brief."

Another party below is Svetlana Avelicheva (Avelicheva), Dmitry's mother, who also sued respondents and Dmitry.[1]

And as to other "participants" below, it might be said they include the attorneys for Dmitry, Avelicheva, and Korchemny, which attorneys became the subject of discovery, an unusual occurrence to be sure, and whose conduct became relevant to the issues below, particularly the attorney fee award.

**The Lawsuits**

On December 15, 2015, Korchemny filed a complaint naming three defendants, Milan, the trust, and Dmitry. It alleged three causes of action: (1) breach of written contract, specifically the non-payment of two promissory notes; (2) common counts; and (3) fraudulent conveyance under Civil Code section 3439.04. Korchemny was represented by attorney Lawrence D. Murray.

On the same day, December 15, Dmitry's mother Avelicheva filed a complaint against Milan, the trust, and Dmitry. It alleged various causes of action arising out of a claimed investment she made in real property owned by defendants. Avelicheva was also represented by Mr. Murray. Within months, Murray was replaced in both cases by attorney Kevin Sullivan of Griffin & Sullivan.

In January 2016, Milan and the trust filed an answer to Korchemny's complaint, which answer included various affirmative defenses, the fourth of which was usury. They were represented by Valle Makoff, LLP.

In April, Dmitry filed his answer to the complaint, represented by the Law Offices of Wallace Doolittle, and James Downs of that office.

---

[1] We refer to each of the Pitermans by their first names and the other participants by their last names, doing so for clarity and for consistency with the briefing.

3

On April 6, Milan and the trust filed a motion to consolidate the two cases. The trial court granted the motion, consolidating the cases for all purposes, and they were assigned to the Honorable Robert McGuiness, a most experienced superior court judge.

On April 26, Dmitry filed a cross-complaint against Milan and the trust, asserting claims for indemnification and contribution.

On May 31, Milan and the trust filed their answer to Dmitry's cross-complaint. They also filed their own cross-complaint against Dmitry.

Milan and the trust filed a motion for leave to file amended answers to allege additional defenses, what might be called a pro forma motion. Korchemny and Avelicheva jointly opposed the motion. Judge McGuiness granted the motion, and on September 15, Milan and the trust filed their amended answer.

On November 22, 2017—as Korchemny describes it, "pursuant to court order"—Korchemny filed a first amended complaint. It omitted the cause of action for fraudulent conveyance, and realleged the causes of action for breach of contract and common counts. The amended complaint added Korchemny as trustee of a 2002 trust as plaintiff and real party in interest, and attached the $600,000 promissory note. One thing about that complaint pertinent here is that, as Korchemny's opening brief describes it, his "two causes of action are based upon two alleged promissory notes—one dated January 2, 2000 . . . and the other December 26, 2001."

**The Discovery**

The discovery in the consolidated cases was extensive, much of it directed at Milan and the trust. But Milan and the trust also engaged in discovery, some of which might be termed unusual, inquiring into the conduct

4

of the attorneys for Dmitry, Korchemny, and Avelicheva—discovery that was enlightening indeed.  Specifically:

Milan served subpoenas on the attorneys seeking records as to the communications between and among them and/or Dmitry.  Dmitry filed a motion for protective order to quash the subpoenas.  Judge McGuiness denied the motion, allowing Milan to proceed with her subpoenas, revealing what can only be called cooperation, if not collusion, between and among them.

Later, Milan filed a motion to enforce a deposition subpoena to the former e-mail provider to Dmitry's attorney Doolittle, seeking records of communications between him and counsel for Korchemny and Avelicheva.  The motion was granted, and the result of that discovery yielded evidence of what respondents' brief describes this way:  "a joint campaign of blatantly oppressive discovery conduct, including serving over 3,000+ written discovery requests to respondents, but none to Dmitry. . . [to which] . . . respondents responded efficiently to 1,247 special interrogatories, 317 requests for production of documents, 279 requests for admissions, and four sets of form interrogatories."  Not only that, the discovery revealed that Dmitry's attorney Doolittle was working for Korchemny, among other things preparing papers on his behalf.  And, it would develop, Dmitry was paying all the attorneys' bills.

**The Motion for Summary Judgment**

On January 16, 2018, Milan and the trust filed a motion for summary judgment on Korchemny's amended complaint.  The motion was simple and straightforward, based on their affirmative defense of usury, arguing that application of California usury law to the undisputed facts demonstrated that Korchemny could not show any balance due on either alleged note because they were fully paid under the law.  In short, as Dmitry's opening brief

accurately describes it, the motion was based on the "4th affirmative defense," usury.

As described in detail below, the moving papers were extensive, over 250 pages of material that included detailed schedules and summaries of over 17 years of payments made to Korchemny on the notes.

On March 22, Korchemny filed his opposition to the motion, which opposition made three arguments: the motion was procedurally "defective"; the interest rate was not usurious; and the evidence supporting the motion was inadmissible. Korchemny also filed objections to evidence.

Milan and the trust filed a reply, and the motion came on for hearing on April 5, where, among other things, Judge McGuiness asked counsel for Korchemny if there was in fact "any real dispute" as to the payments made on the notes as reflected in the moving papers. Counsel replied he was "not disputing the actual numbers."

Following the hearing, Judge McGuiness ordered the parties to submit additional briefing on the evidentiary objections. Both parties filed supplemental briefs, and also responses to the supplemental briefs.

Judge McGuiness held a further hearing on August 14, and the next day filed his order granting summary judgment. It was a comprehensive seven-page, single spaced order that explained in detail the reasons for his ruling.

Judgment was entered on August 24, from which Korchemny filed an appeal.

**The Motion for Judgment on the Pleadings**

Days after the judgment was entered, Milan and the trust filed a motion for judgment on the pleadings as to Dmitry's cross-complaint. They argued that their summary judgment demonstrated they were not liable for

either of Korchemny's claims and therefore could not be found liable for Dmitry's claims in the cross-complaint for indemnification and contribution.

Dmitry filed opposition to the motion arguing that it was not timely and that the summary judgment did not dismiss him from Korchemny's complaint nor from his cross-complaint for indemnification and contribution.

Respondents filed a reply and, following a hearing, on September 25, Judge McGuiness filed his order granting judgment on the pleadings. Judgment was entered on November 21, from which Dmitry filed his appeal.

**The Motion for Attorney Fees**

Meanwhile, on October 22, Milan and the trust filed a motion for attorney fees from Korchemny, supported by voluminous moving papers, as discussed below. Korchemny filed, however belatedly, brief opposition, arguing that the motion was procedurally improper in light of his appeal, and also arguing that the motion lacked evidentiary support and that the fees sought were excessive.

The fee motion was heard on December 4, following which Judge McGuiness requested further briefing as to the allocation of the fees between the defense of Korchemny's action and the consolidated Avelicheva action and the respective cross-complaints. Milan and the trust filed the requested brief; Korchemny did not. Following a further hearing, on May 10, 2019, Judge McGuiness filed his order awarding attorney fees of $318,400.50, from which Korchemny filed his second appeal.

One last item of note is that respondents also obtained summary judgment as to Avelicheva's complaint. Judgment was entered dismissing it, from which Avelicheva appealed. On August 12, 2019, we granted the parties' stipulated motion to consolidate the three appeals, the two by

7

Korchemny and the one by Avelicheva. On October 22, Avelicheva dismissed her appeal, and so what remains are the appeals we address here.

## DISCUSSION

### Introduction

As noted, Korchemny's amended complaint alleged two causes of action, breach of contract and common counts which, as Korchemny's opening brief describes it, "causes of action are based upon two alleged promissory notes—one dated January 2, 2000 . . . and the other December 26, 2001." As also noted, respondents' answer included affirmative defenses, one of which, the fourth, was usury. And as Korchemny's brief also acknowledges, the motion for summary judgment was based on the "4th affirmative defense."

### Summary Judgment Law and the Standard of Review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted (*Aguilar*).)

If the moving party meets its burden, the burden then shifts to the plaintiff to show a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) "The plaintiff . . . shall not rely upon the allegations . . . of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*)

8

We review a decision on a summary judgment motion de novo, (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*)), which review leads easily to the conclusion that the summary judgment here is right.  Before turning to a demonstration of why, we begin with the law of usury, well set forth by our Division Four colleagues in *Hardwick v. Wilcox* (2017) 11 Cal.App.5th 975 (*Hardwick*).

**The Law of Usury**

" 'Usury if the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money.' [Citation.]  A transaction is usurious if there is a loan at greater than the legal rate of interest or an exaction at more than the legal rate for the forbearance of a debt or sum of money due.  [Citation.]" (*O'Connor v. Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 713.)

" 'California Constitution, article XV, section 1 limits the interest rate for a "loan or forbearance" of money not primarily for personal, family or household purposes, to the higher of:  (1) 10 percent per annum or (2) five percent plus the rate of interest prevailing on the 25th day of the month preceding the earlier of the date of the extension of the contract to make the loan or forbearance or the date of making the loan or forbearance, established by the Federal Reserve Bank of San Francisco on advances to member banks under sections 13 and 13(1) of the Federal Reserve Act.  [Citation.]' (*DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 733; see also *Southwest Concrete Products v. Gosh Construction Corp.* (1990) 51 Cal.3d 701, 705 ['The law of usury in California is based upon California Constitution, article XV, section 1, which limits the interest payable "[f]or any loan or forbearance of any money." ' (fn. omitted)].)

" ' "When a loan is usurious, the creditor is entitled to repayment of the principal sum only.  He is entitled to no interest whatsoever.  [Citations.]" [Citation.]' (*Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 403.)  'The attempt to exact the usurious rate of interest renders the interest provisions of a note void.  [Citations.]' (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122–123.)  Furthermore, interest payments that were made at the usurious rate should be credited against the principal balance in any action to collect on the note. (*Westman v. Dye* (1931) 214 Cal. 28, 31–38 . . . ; *District Bond Co. v. Haley* (1935) 2 Cal.2d 308, 311; *Paillet v. Vroman* (1942) 52 Cal.App.2d 297, 306–308; *Shirley v. Britt* (1957) 152 Cal.App.2d 666, 670.)" (*Hardwick, supra,* 11 Cal.App.5th at pp. 978–979.)

"The essential elements of usury are:  (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction.  (See generally, 4 Miller & Starr, Cal. Real Estate Law (2d ed. 1989) § 10:2, p. 650 . . .; Comment, *A Comprehensive View of California Usury Law* (1974) 6 Sw.U. L.Rev. 166, 174.)  The element of intent is narrow.  '[T]he intent sufficient to support the judgment [of usury] does not require a conscious attempt, with knowledge of the law, to evade it.  The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete.' " (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798 (*Ghirardo*).)

The last sentence in *Hardwick, supra,* 11 Cal.App.5th 975, citing among other cases *Westman v. Dye, supra,* 214 Cal. 28 (*Westman*), is

particularly applicable here, the principle that all payments of usurious interest are applied to principal, even if the parties have treated them as interest. As *Shirley v. Britt, supra*, 152 Cal.App.2d at pp. 669–670, put it, also citing *Westman*, " 'the instant a payment is made of usurious interest it is applied to the principal, and the principal indebtedness at the time of such payment is reduced to the extent thereof.' "

### Summary Judgment Was Properly Granted

Korchemny's amended complaint was, as he acknowledges, based on two promissory notes, one in 2000, one in 2001. Seeking summary judgment on that complaint, respondents filed moving papers that included a declaration from their attorney Jeffrey Makoff that attached and authenticated 31 exhibits, many of which were based on Korchemny's and Dmitry's own bank and payment records. These exhibits demonstrated that the payments over 17 years had extinguished the notes, demonstrating the following:

The 2000 note is the principal amount of $600,000, and provides for "interest thereon, payable in like lawful money from [January 1, 2000,] until paid at the rate of 12 percent per annum." According to Korchemny's amended complaint, the 2000 note was "modified a few days after the making to demonstrate the interest to be paid at 10 percent," and that thereafter "10 percent interest was paid until early 2004, when the parties orally agreed to reduce the actual cash payments to 7.5 percent and the remaining unpaid 2.5 plus percent added to the principal." As will be shown, this allegation is legally-immaterial in light of the fact that usurious interest was charged by— and paid to—Korchemny.

The 2001 note is the principal amount of $232,400, and provides for "interest thereon at the rate of 10 percent per annum on the unpaid balance."

11

This interest rate is a lawful rate, but as demonstrated by the moving papers usurious interest was charged—and paid—on it.[2]

The moving papers, over 250 pages of moving papers in all, presented detailed summaries of the payments received by Korchemny on the notes, detailed summaries based on Korchemny's and Dmitry's own banking and accounting records and on their own sworn deposition testimony. Indeed, at no point below, nor here, does Korchemny dispute the accuracy of the payment summaries, as perhaps best demonstrated by his counsel's response when Judge McGuiness asked whether there is "a contest here as to the timing and amounts of payments made." That response: counsel was "not disputing the actual numbers."

In any event, the undisputed evidence demonstrated that Korchemny received the following payments on the notes:

With respect to the 2000 note, from February 1, 2000, through December 1, 2001 (before the 2001 note came into existence), Korchemny was paid $8,000 per month, $96,000 a year, interest, creating an effective 16 percent interest rate for that 23-month period. In short, both the stated rate (12 percent) and the actual rate (16 percent) in the 2000 note were usurious.

After the 2001 note came into existence (on December 26, 2001), the $8,000/month interest payments continued for two more years until December 31, 2003. This equated to an effective interest rate of more than 10 percent per annum on both notes.

In January 2004, Korchemny allowed a reduction of the payments on both notes, with the unpaid interest to accrue and be added to principal,

---

[2] Both notes were demand notes, which meant that all payments made were of interest, never principal. As Korchemny admitted, there was "never a conversation about paying principal."

which meant that the $8,000/month payments were reduced to $5,000/month. The total alleged interest obligation and the interest payments made both remained usurious.

For the next 11 years, seven months—from January 1, 2004 to August 10, 2015—Korchemny was paid regular monthly interest payments of $5,000 (with a few months in which interest was skipped then caught-up.) After August 2015, Korchemny was paid at least $2,500/month. This equated to an effective interest rate of more than 10 percent per annum on both notes.

In sum, the moving papers demonstrated that when the required principal reductions through December 31, 2003 are accounted for, every interest payment after December 31, 2003 violated California usury limits, with the effective interest rate on the combined notes ranging from 11.97 percent in January 2004, to 141 percent in August 2015, to over 500 percent just before the 2001 note was fully paid. And when the payments are applied to reduce principal in accordance with California usury law, the result is that the 2000 note was fully paid off by May 2011 and the 2001 note fully paid off by January 2017.

In light of the above, the summary judgment was right.

Korchemny's arguments to the contrary are easily rejected. Korchemny makes five arguments, arguments that are brief indeed, all five set forth in fewer than 13 pages. Some of the arguments are unsupported by any authority, and could be denied on that ground alone; others of the arguments are frivolous. We discuss the arguments in order.

Korchemny's first argument is that respondents "did not meet the standard [for] summary judgment." After citing to two boilerplate principles of summary judgment law, the argument concludes as follows: "There were numerous facts overlooked by the trial court that disputed each of the

material issues set forth in the respondents' motion for summary judgment. These disputes of material facts support overturning the trial court order granting the summary judgment, and setting aside the subsequent judgment dismissing appellant's complaint against respondents." That is it—and no such "facts" are set forth.

Korchemny's second argument is that the motion "was procedurally defective." The argument is premised on a misdescription—if not outright misrepresentation—of the motion here, calling it a motion for summary adjudication.[3] Such misdescription has no place here. Korchemny made this same argument below, an argument Judge McGuiness properly rejected, ruling that rule 3.1350(b) of the California Rules of Court is "inapplicable," as Milan and the trust were "not seeking summary adjudication as to only part" of Korchemny's amended complaint, but "instead . . . seeks summary judgment as to the entire [amended complaint]." Indeed.

The motion was entitled for summary judgment. It was, as noted, directed to both causes of action, both of which, as Korchemny's brief admits, are based on the "two alleged promissory notes." And the motion was based on the defense of usury, a defense that defeated both causes of actions. Thus, summary judgment was proper, just as it has been in countless other cases involving affirmative defenses. (See, e.g., *Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867 [release]; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480 [preemption].) In sum, the motion was for summary

---

[3] A misdescription Korchemny uses in the very first line of the Introduction in his brief, where he asserts that respondents' "summary adjudication motion . . . was both procedurally and substantively defective."

14

judgment, and Korchemny's cases[4] dealing with summary judgment law are inapplicable.

Korchemny's third argument is that the notes "were not paid in full," an argument that has three subparts: (1) the interest was not usurious; (2) the "note transaction was not a simple loan"; and (3) "the interest payments do not diminish the non-usurious note principal."

The first sub-argument, that the interest rate was not usurious, asserts that "the parties reduced the rate to the legal rate." This, of course, ignores the settled law quoted above, and Korchemny's efforts to distinguish *Hardwick* and *Ghirardo* are unavailing.

The second sub-argument argues that the "promissory note transaction was not a simple loan." This argument cites some boilerplate principles of law, and baldly concludes "there is ample testimony that the 2000 promissory note was converted to an investment interest in the Piterman family joint venture, and therefore not therefore [*sic*] strictly a loan generating usurious interest payments." The argument ignores, if not misrepresents, the record.

To begin with, Korchemny's first cause of action, for breach of contract, alleges that the promissory note agreements were breached when respondents "stopped all payments of inter[e]st on the two promissory notes and thereafter repudiated any obligation on said promissory notes, thus breaching and accelerating each promissory note." The amended complaint seeks "[u]npaid principle [*sic*] in the amount of $832,400, and unpaid interest

---

[4] *Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, and *Homestead Savings v. Superior Court* (1986) 179 Cal.App.3d 494. The third case Korchemny cites, *Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, does not even address the issue.

15

as of this date of $499,712.00." So, the action was on "the two promissory notes."[5]

Korchemny attempted the same deflection argument below, and Judge McGuiness saw through it, observing that "Korchemny's argument that the 2001 note was 'converted' into an investment is inconsistent with what he alleges in the operative pleading." But worse, Korchemny's argument is inconsistent with his sworn position below. This included, for example, his admissions in discovery that he was a lender who made a loan; that "the loan was for 10 percent"; and that he "was giving a loan to the family." Dmitry too spoke along these same lines, that "Mr. Korchemny alleges a breach of the [2000 note] in which he *lent* [respondents] $600,000 . . . . Subsequently, on December 26, 2001, Mr. Korchemny *loaned* an additional $232,400 to [respondents].]" Dmitry also referred to the "*Korchemny loan*" and the "money [that] was *lent* to us." (Emphasis added.)

In the course of this second sub-argument, Korchemny asks that we look beyond the "form" of the transactions to their "substance." Respondents say, "let's do that," going on to show that the notes were just that, notes, via evidence demonstrating that the notes required monthly interest payments; that they were secured by real property; and that payments on the notes were deducted as interest.

---

[5] This, then, is the allegation that respondents were to address in their motion: " 'The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability as alleged in the complaint. . . . The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.' " (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 829.)

16

Korchemny's third sub-argument is that the "interest payments do not diminish the non-usurious note principal." The argument is all of six lines long, and it cites nothing, saying only that "as set forth above, the subject promissory notes were not usurious, and the nature of the transaction was akin to an investment with ongoing annuity payments." That is it. And no response is necessary.

Korchemny's fourth argument is that he "alleged a viable common count claim." The argument fails for several reasons.

First, it does not matter what Korchemny "alleged." The issue is whether he can demonstrate a triable issue of material fact. He does not.

Second, a common count is not a recognized cause of action. As we have described: "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory. (See *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 14–15; see generally 4 Witkin, Cal. Procedure [(4th ed. 1997)] Pleading, §§ 514–518, 522(1), pp. 603–609, 612.) When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable. [Citations.]" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394; accord, *Professional Collection Consultants v. Lujan* (2018) 23 Cal.App.5th 685, 690.)

Third, as Korchemny concedes, his "two causes of action are based upon two alleged promissory notes—one dated January 2, 2000 . . . and the other December 26, 2001 . . . ." And as shown above, the causes of action fell to the usury defense, thus defeating any "common count," just as Judge McGuiness

17

aptly described:  after noting that "Korchemny did not introduce evidence giving rise to a triable issue of fact in this regard," he noted that "[g]iven that the common count is based on the same loans addressed in the first cause of action, the claim is unmeritorious as a matter of law for the same reasons discussed in Section B [regarding Korchemny's first cause of action for breach of contract] above."

Korchemny's fifth argument asserts that the "summary judgment was based on incompetent and inadmissible documents and unfounded calculations."  The argument is less than one and one-half  pages and cites nothing.[6]  The argument consists of conclusory statements such as "nearly all the exhibits" to counsel's declaration were inadmissible "on numerous grounds," going on to cite only two:  lack of authentication and hearsay. Hardly.

As noted, the moving papers included a declaration of attorney Makoff that had attached to it 31 exhibits.  They included payment summary spreadsheets that set forth support for every entry in the column marked documentation.  Mr. Makoff's declaration describes who produced the documents and in the case of deposition testimony, attached the transcript. And the supplemental brief submitted to Judge McGuiness, along with the declaration of Makoff's associate Patrick Freeman with its exhibits, provided further authentication of the material.  (See Evid. Code, §§ 1400, 1414, 1420; *People v. Gibson* (2001) 90 Cal.App.4th 371, 383 ["Circumstantial evidence,

---

[6] There is one cite, to Korchemny's papers filed in the trial court.  This is improper, as an appellant cannot incorporate documents filed in the trial court.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 109; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 [If appellant merely incorporates by reference arguments made in papers in trial court, the contention will be deemed forfeited].)

content and location are all valid means of authentication"].) On top of all that, the material in the spreadsheets is basic addition and multiplication, which was fully subject to verification by Korchemny and his experts.[7]

Finally on the issue, we note the fact—a fact ignored in Korchemny's brief—that Judge McGuiness considered the spreadsheets "only for purposes of argument based on the admissible evidence submitted in the other exhibits, declarations and deposition testimony"; he expressly did "not consider[] them as evidence of payments separate and apart from such other admissible evidence."

In any event, Korchemny cites to nothing indicating that the evidence of payments was inaccurate in any way, nothing even alluding to an error or mistake, nothing claiming that the financial records not genuine or were otherwise false. In short, Korchemny had every chance to raise a real issue as to authenticity, and he did not, a failure that is perhaps not surprising, given his counsel's candid concession he "was not disputing the actual numbers" involved—a concession, we note, that is "a binding judicial admission." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.)

---

[7] Buried in Korchemny's generic argument may be the claim that the summaries required expert testimony, as his brief asserts that "These unintelligible 'summaries' were manufactured by respondents as evidence for the summary judgment, they . . . contained argument, and improper and baseless and unsubstantiated calculations, rather than qualified expert opinion." Not only is the argument unsupported by any authority, it is wrong, as manifested by *Hardwick*, *supra*, 11 Cal.App.5th 975, where the undisputed loan payment history and calculations showed, without expert opinion, that payments on the usurious loans totaled more than the combined principal amount of the loans.

**The Attorney Fee Award is Supported by the Record**

**Background**

After obtaining summary judgment, Milan and the trust filed the motion for attorney fees, seeking $338,730.50. The motion was based on the contractual language in the 2000 note that, "in the event this note shall be in default, and placed with an attorney for collection, then the undersigned agree to pay all reasonable attorney fees and costs of collection."

When a party seeks to enforce a contractual attorney fee provision, Civil Code section 1717 comes into play, making the attorney fee provision reciprocal in two ways applicable here. (Civ. Code, § 1717, subd. (a).) First, it allows either party to collect fees if the contract allows one party but not the other to do so. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 819.) Second, it allows "a party who defeats a contract claim by showing the contract . . . was unenforceable to nonetheless recover attorney fees under that contract if the opposing party would have been entitled to attorney fees had it prevailed." (*Ibid.*)

The motion was accompanied by extensive supporting material, comprising over 600 pages. That supporting material included a declaration of Mr. Makoff that testified in detail to the work he and his firm had done. The material included the history of the case and the extensive work involved. It included the detailed billing records of all four attorneys involved, along with their qualifications. And it included evidence of prevailing billing rates.

Mr. Makoff's declaration contained two other items of note. The first was a description of the firm's billing practices, demonstrating how the Avelicheva case was billed separately from the Korchemny case and thus how

joint work (for example, a hearing on both cases) was allocated fairly[8]. The second was a detailed showing of what respondents' brief calls the "atypical facts that required additional time and effort," demonstrating that "defending" Korchemny's action required Milan and the trust to fight on two fronts, against both Korchemny and Dmitry, who were working closely together on what Korchemny's counsel called "joint strategy" to support his claims.

Korchemny filed opposition to the fee motion that consisted of all of five pages, within which were four arguments: (1) the motion should be stayed; (2) the fees sought were "excessive"; (3) the motion lacked proper evidentiary support; and (4) the moving papers did not support the amount claimed. No detail was provided for any argument.

Respondents' filed a reply, and the fee motion came on for hearing on December 4. Following that hearing, Judge McGuiness requested further briefing from respondents as to the allocation of the fees and invited Korchemny to file supplemental papers as to Korchemny's contentions as well, stating that he "expects such papers to include more specific identification of those billing entries that Milan Defendants [*sic*] contend are 'conclusory,' excessive, or do not sufficiently relate to the Korchemny matter." Respondents filed such papers; Korchemny did not.

The motion came on for further hearing on February 21, and on May 10, Judge McGuiness filed his order awarding attorney fees. It was a comprehensive, four-page, single spaced order that analyzed in detail the reasons supporting that award. Among other things, Judge McGuiness noted

---

[8] Prompting this compliment from Judge McGuiness: "The manner in which the joint tasks were allocated to the Korchemny matter is explained with painstaking supporting details in the supplemental papers filed on February 8, 2019."

that the moving papers provided persuasive evidence of the billing rates of Mr. Makoff, his partner, and his two associates, and that Korchemny "did not contest these hourly rates or introduce evidence that they were excessive." He also noted how the "contemporaneous invoices" showed how the fees were allocated. After those and other observations, Judge McGuiness concluded: "After carefully considering the declarations and supporting invoices and tables, and considering the explanations for the nature of the work performed by counsel in this case over three years, the court determines that the hours expended and for which compensation is requested from Korchemny were reasonably incurred given the extensive work required in the case, including the key events described at length in paragraph 5 of the Makoff declaration." And he awarded respondents attorney fees of $318,400.50.[9] That award is fully supported.

**The Law and Standard of Review**

The fundamental approach for an award for attorney fees is the lodestar method, under which "attorney fees are calculated by first multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate of compensation." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48, fn. 23.) "Reasonable," the operative word in the attorney fee provision in the note, is also the key word in the law. And "determining the amount of a reasonable attorney's fee . . . is necessarily ad hoc and must be resolved on the particular

---

[9] Judge McGuiness did reduce the "lodestar" amount of $338,730.50 by $20,330.00 to take into account Korchemny's arguments that some of the work was for tasks in the two cases that should not be allocated to Korchemny, as well as some work for which he already awarded attorney's fees.

circumstances of each case." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 452.)

We review Judge McGuiness's award for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096.) As we have put it, " ' "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." ' " (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 832–833; accord, *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 620.) As we added in *Calvo*, quoting our colleagues in Division Four: The " 'only proper basis of reversal of the amount of an attorney fee award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*Ibid.*, quoting *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) That does not describe the award here.

Korchemny makes two preliminary arguments against the fee award, one procedural, one evidentiary, both of which arguments are frivolous. Korchemny first asserts, in an argument of less than one page, that the fee motion was "premature" in light of the appeal he had filed, an argument that cites nothing in support. Respondents' brief does cite authority, most significantly *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368–369, superseded by statute on other grounds as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1197, where, rejecting the identical argument Korchemny makes here, the court held as follows: "Contrary to Bankes's argument, the filing of a notice of appeal does not deprive the trial court of jurisdiction to award attorney fees and costs post trial. . . . [I]t has

23

been held that a motion for attorney fees is not premature despite the filing of a notice of appeal.  [Citations.]  [¶]  In any event, an award of attorney fees as costs is a collateral matter which is embraced in the action but is not affected by the order from which an appeal is taken.  (Code Civ. Proc., § 916, subd. (a); *In re Marriage of Sherman* (1984) 162 Cal.App.3d 1132, 1140.) Consequently, filing a notice of appeal does not stay any proceedings to determine the matter of costs and does not prevent the trial court from determining a proper award of attorney fees claimed as costs."

Eschewing any mention of *Bankes*, Korchemny responds only that the issue is one of "equity," an "argument" citing no case involving the issue here.

Korchemny also asserts, in an argument that is all of 15 lines, that the "fee motion lacked proper evidentiary support."  Pointing to nothing, Korchemny asserts that the supporting declarations were "conclusory." Korchemny could not be more wrong.

As the above description makes clear, Mr. Makoff's declaration set out in meticulous detail the evidence of the work the attorneys did, meticulous detail noted by Judge McGuiness.  And much of that work was  caused by the conduct of the attorneys for the other three litigants, Korchemny, Avelicheva, and Dmitry.  Such detail revealed, for example, the following:

Dmitry's attorney Doolittle assisted in the preparation of Korchemny's complaint, a complaint naming Dmitry!  Mr. Doolittle also drafted a writ of attachment that Korchemny filed on an ex parte basis on January 12, 2016, in an attempt to seize a $300,000 equalizing payment—a payment that only Dmitry and his attorney Doolittle knew was due from Dmitry to Milan.

In March 2016, Korchemny and Avelicheva retained the same litigation attorney, Mr. Sullivan, who represented Korchemny and Avelicheva from

24

that point on.[10]  To help Mr. Sullivan "get up to speed on the case," Dmitry's attorney Doolittle sent Mr. Sullivan a detailed "explanation" of Korchemny's and Avelicheva's claims.  The next month, Mr. Sullivan sent Mr. Doolittle an email stating that he had received the file from Mr. Murray (Korchemny's and Avelicheva's first attorney) with the following comments:  "Does Dimtrious [*sic*] understand that I will have to review these?  Any pointers on what to focus on in my review to save time.  Let's talk about coordinating joint strategy."

Mr. Sullivan sent Mr. Doolittle an "Attorney Client Fee Agreement" that states:  "Dmitry . . . agrees to pay all fees incurred by . . . Avelicheva and . . . Korchemny with Griffin & Sullivan."  Ensuing emails show Dmitry's attorney returned the signed fee agreement to Mr. Sullivan and that Dmitry paid Korchemny's and Avelicheva's attorney fees.[11]

Mr. Sullivan's invoices for the consolidated actions show numerous instances of coordination between him and Dmitry's counsel, including tasks such as "multiple emails with Downs re:  coordination of discovery and events on behalf of the parties opposing Milan" and "t/c's with WCD [Wallace C. Doolittle] re:  coordination efforts."  They worked together to prepare Korchemny's and Avelicheva's oppositions to the motions for summary judgment (as to both the Korchemny and Avelicheva actions), to the point that Mr. Doolittle drafted the oppositions!  Korchemny was, of course, party to all this.

---

[10] Mr. Sullivan also represented Korchemny on appeal, filing his opening brief.  But Mr. Sullivan passed away, and was replaced.

[11] Emails also show that Dmitry paid the retainer for Korchemny's and Avelicheva's joint expert, Barry Ben-Zion.

25

The above is just a small sampling, and we could go on at length to demonstrate the extent of this coordination, a demonstration that would cause an already long opinion to be much longer. Suffice to end by paraphrasing the Supreme Court's observation in *Serrano v. Unruh* (1982) 32 Cal.3d 621, 638, there talking about the California Attorney General, that one " 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent . . . in response.' "

**Judgment on the Pleadings was Proper**

As noted, in Korchemny's lawsuit Dmitry filed a cross-complaint against Milan and the trust, alleging claims for indemnity and contribution.[12] Following their success on summary judgment, Milan and the trust moved for judgment on the pleadings on that cross-complaint. The motion cited to Code of Civil Procedure section 438 (section 438), subdivision (e) of which provides as follows: "No motion may be made pursuant to this section if a pretrial conference order has been entered pursuant to section 575, or within 30 days of the date the action is initially set for trial, whichever is later, unless the court otherwise permits." Judge McGuiness granted the motion, in the course of which he noted he was exercising the discretion granted him by

---

[12] The indemnification cause of action alleges: "[i]f I am found in some manner responsible to plaintiff or to anyone else as a result of the incidents and occurrences described in plaintiff's complaint, my liability would be based solely upon a derivative form of liability not resulting from my conduct, but only from an obligation imposed upon me by law; therefore, I would be entitled to complete indemnity from each cross-defendant."

The contribution cause of action alleges: "if as a result of the matters alleged by plaintiff, Dmitry Piterman is held liable for all or any part of plaintiff's alleged damages, cross-defendants, to the extent that their fault is determined by the court, are obligated to reimburse and are liable for contribution to Dmitry Piterman for all or any liability so assessed against Dmitry Piterman and costs incurred by Dmitry Piterman."

26

subdivision (e): "First, the court exercises its discretion to determine the motion despite the assertion by [Dmitry] that the motion is untimely. . . . Though Dmitry is correct that [the motion] would be untimely under the first two clauses [of section 438, subdivision (e)], the third clause 'authorizes the trial court to permit late filing of such motions and does not specify any grounds which might serve to limit its power to do so.' [Citations.]"

Dmitry appealed, and has filed what he calls a "cross-appellant's brief," which has three brief arguments, set forth in fewer than six pages. The first argument, which consumes most of the pages, argues that the motion for judgment on the pleadings was not "timely filed." The argument cites to section 438, subdivision (e), but ignores the case law under that section, which allows courts the broadest of discretion to conclude what the court "otherwise permits." As our colleagues in Division Three put it, section 438, subdivision (e) "authorizes the trial court to permit late filings of such motions and does not specify any grounds which might serve to limit its power to do so." (*Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13, 25, fn. 4; see *Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1063 [Section 438, subdivision (e) permits late filings of motions for judgment on the pleadings and does not impose a "good cause" requirement].) Dmitry has shown no abuse of discretion.

Buried in this argument, however halfheartedly, is the intimation that "unless otherwise permits" language required respondents to "seek the permission" of the trial court prior to filing the motion. Dmitry cites no legal authority to support this position, rendering the contention waived. (*In re Sade C.* (1996) 13 Cal.4th 952, 994; *Gonzalez v. City of Norwalk* (2017) 17 Cal.App.5th 1295, 1311.) In any event, section 438, subdivision (e) does not require a moving party seek "permission," i.e., leave of court, before filing

a motion, something the Legislature knows how to say if such permission is required. (See, e.g., Code Civ. Proc., § 472 [setting out grounds upon which a party can amend its complaint "without leave of the court"]; Code Civ. Proc., § 428.50, subd. (c) ["A party shall obtain leave of court to file any cross-complaint except one filed within the time specified in subdivision (a) or (b)"]; Code Civ. Proc., § 405.36 [after lis pendens expunged, a claimant may not record another lis pendens without leave of court].)

Dmitry also argues that Judge McGuiness lacked authority to "convert" respondents' statutory motion for judgment on the pleadings to a common law motion and that due to such "conversion," Dmitry was deprived of the opportunity to oppose the motion on "common law grounds." This argument is fatuous. The common law ground for a motion for judgment on the pleadings is identical to the statutory ground: "The complaint does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii); *Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 586 ["to prevail on a [nonstatutory] motion for judgment on the pleadings, a defendant must show a complaint fails to state a cause of action"].) As Witkin describes it: "When the . . . party [moving for judgment on the pleadings] is the defendant, 'there are two permissible grounds: (a) The court lacks subject matter jurisdiction, or (b) the complaint does not state facts sufficient to constitute a cause of action against the defendant. . . . The second of these is the traditional [common law] ground.' " (6 Witkin, Cal. Procedure (5th ed. 2020) Proceedings Without Trial, § 189.)

Respondents' notice of motion and their points and authorities gave Dmitry express notice of the grounds of the motion: the cross-complaint failed to state facts sufficient to constitute a cause of action against respondents. Not only was Dmitry fully aware of the basis of the motion, he

28

was heard on the issue, his opposition arguing that judgment on the pleadings would improperly "dismiss the entire complaint" because his "claims for indemnification of all costs incurred to date are not addressed."

Finally, even if Dmitry could show any error—which he has not—it would necessarily be harmless. This is so because if Dmitry and his counsel were candid, they would have to admit that there will not be anything for which Dmitry could be indemnified, or get contribution. The fact is that if Dmitry had acted like a defendant typically does, and fought against plaintiff Korchemny, Dmitry too, would have proven usury, and would thus not be liable to Korchemny. To the contrary, he would have been the prevailing party, and entitled to his costs.

## DISPOSITION

The judgments dismissing Milan and the trust from Korchemny's complaint and from Dmitry's cross-complaint are affirmed, as is the order awarding attorney fees. Milanendra Piterman and the Milan Freedom Trust are awarded their costs on appeal.

_____
Richman, J.

We concur:


_____
Kline, P. J.


_____
Miller, J.


*Korchemny v. Piterman* (A155483; A157716)

Filed 9/17/21 after nonpublished opinion filed 8/27/21
**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| REMI KORCHEMNY,<br><br>    Plaintiff and Appellant,<br>v.<br><br>DMITRY PITERMAN et al.,<br><br>    Defendants and Respondents. | A155483; A157716<br><br>(Alameda County Super. Ct.<br>Nos. RG-15796802,<br>RG-15796804) |

BY THE COURT:

   The opinion in the above-entitled matter filed on August 27, 2021, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____                    _____
                                                                                  Kline, P.J.

1

Court:  Alameda County Superior Court

Trial Judge:  Hon. Robert McGuiness

Kevin M Sullivan, Law Offices of Kevin M. Sullivan; Bradley Bayan, Law Offices of Bradley Bayan, for Plaintiff and Appellant Remi Korchemny

Jeffrey T. Makoff, Patrick T. Freeman, Roxanne E. Makoff, Valle Makoff LLP, for Defendants and Respondents Milanendra Piterman and The Milan's Freedom Trust

Wallace C. Doolittle, James P. Downs, Law Offices of Wallace C. Doolittle, for Defendant and Cross-Appellant Dmitry Piterman

A155483; A157716, *Korchemny v. Piterman*

2